

**ADCOCK & MORRISON, PLLC**
ATTORNEYS AT LAW

199 Charmant, Suite 1/39157
Post Office Box 3308
Ridgeland, Mississippi 39158

Telephone 601-898-9887
Facsimile 601-898-9860
adcockandmorrison.com

October 7, 2013

**VIA EMAIL & U.S. MAIL**

J. Cal Mayo, Jr., Esquire
MAYO MALLETTE, PLLC
Post Office Box 1456
Oxford, Mississippi 38655

Re: *John Harvey v. Caesars Entertainment Operating Company, Inc., et al*; U.S. District Court for the Northern District of Mississippi, Delta Division, Cause No. 2:11-CV-00194-NBB-SAA

Dear Cal:

This letter is to request supplementation of discovery with regard to the above referenced matter. Although your written discovery responses to Interrogatories and Requests for Production of Documents were dated August 20, 2013, we did not receive the signed Responses until September 18, 2013, with some revisions, and received three (3) productions of documents along the same time period in September. We have almost completed review of the last 5,000 page production which contained mostly duplicate documents. Also, your firm has promised a comprehensive privilege list of documents withheld from production based on an assertion of some privilege, but we have not received the same.

The following is our Good Faith request for supplementation concerning your Interrogatory Responses with reason for supplementation:

**INTERROGATORY NO. 3:** Please itemize by date and amount all gambling wins and losses of Plaintiff at any casino owned by Defendants in 2010 and 2011, and list all free amenities provided to Plaintiff such as lodging, meals, alcoholic beverages, airfare or reimbursement of cost of airfare, attendants, transportation or other free amenities during this time period.
**RESPONSE TO INTERROGATORY NO. 3:** Responsive records are Bates numbered CZR 000002; CZR 000005-000016; and CZR 000017. Defendants note that not all casinos reflected on the responsive records are owned and operated by any of the named Defendants to this action.

1



EXHIBIT
"C"

**REQUEST TO SUPPLEMENT INT NO. 3:** You responded to our question by referral to documents numbered CZR2-8 and CZR9-16 regarding Guest Comp Slip and RC Details. We were able to understand CZR2-8, except for the reference to "RC" and need to know your definition of RC to be able to understand these documents. With regard to CZR9-16, we are unable to understand these documents as all appear to be coded. Please supplement your answer regarding amenities given to Harvey by providing this information. With regard to gambling debts and losses by dates and amounts, you produced document number CZR17 which is titled "Total Rewards Tier Card Guest Inquiry" which produced totals for casinos in 2005, 2006, 2007, 2010 and 2011. We request that this part of the Interrogatory be answered by providing by date gambling wins and losses at any casino owned by the Defendants in 2010 and 2011.

**INTERROGATORY NO. 4:** Regarding the events leading to Plaintiff's criminal prosecution for having written "worthless checks" by the New Orleans District Attorney's office, provide the name, address and employer of the persons that investigated whether Plaintiff committed a crime under Louisiana Code RS 14:71 and RS 16:15 and that participated in the decision to prosecute Plaintiff, state what investigation was done, and state when the investigation began and concluded, and when during this process any of the named Defendants or other Caesars' entities contacted and provided information to the District Attorney's offices in Bossier City and New Orleans, Louisiana, and requested the arrest of Plaintiff pursuant to Louisiana Code RS 14:71 and RS 16:15 *et seq.*, and please give the name, address, phone numbers, and employer of the persons who made such communications on behalf of Defendants. In doing so, please state the factual and legal basis and all reasons for making such communications on behalf of any Defendants, and please specify all witnesses, documents, and other evidence that you contend supports your position that Plaintiff violated Louisiana Code RS 14:71 and RS 16:15.

**RESPONSE TO INTERROGATORY NO. 4:** Defendants object to this request to the extent it seeks information protected by the attorney-client privilege and the work-product doctrine. Without waiving these objections, Defendants affirmatively state that discovery is not yet complete and reserve the right to supplement this request as permitted by the Rules of Civil Procedure or the Court. Defendants' agents did not investigate criminal activity, participate in the decision to prosecute Plaintiff or request Plaintiff's arrest. All such decisions were soley within the province and discretion of the respective prosecutors' offices. Louisiana law provides that the issuance of worthless check in the amounts of Plaintiff's markers is a felony. Plaintiff stopped payment on his outstanding marker. Representatives of Defendants Jazz Casino Company, LLC and Horseshoe Entertainment, LP reported Plaintiff's returned markers to the Orleans Parish District Attorney and the Bossier Parish District Attorney. Those written reports have been previously produced and speak for themselves.

**REQUEST TO SUPPLEMENT INT NO. 4:** Your answer did not provide name, address and employer of all persons who participated in the decision to prosecute Plaintiff and refer the case to the District Attorney's offices in New Orleans and Bossier City, Louisiana and the date or dates that this occurred. Although you state that Defendants did not participate in the investigation of a crime, Nick Geraci emailed various Defendants' employees at DEF-408 states that the District Attorney's office can proved "intent to

defraud" with Harrah's employees' Affidavits about speaking with John Harvey about the case. Adrian Rideau signed an "Agreement to Prosecute" with the New Orleans D.A.'s office and Fred Fair signed a Worthless Check Affidavit wherein he requested that John Harvey be prosecuted by the Bossier City D.A. at the bottom of the page. As such, Defendants entered an Agreement to Prosecute John Harvey in New Orleans and requested that the D.A. prosecute John Harvey in Bossier City, and also apparently provided the New Orleans D.A. with Affidavits which the D.A.'s office intended to use in the prosecution to prove "intent to defraud". No Affidavits of Harrah's employees have been produced other than the Worthless Check Affidavits. Further, you failed to state the factual and legal basis for entering the above referenced Agreement to Prosecute and Request to Prosecute John Harvey or other evidence which you claim support your position that Plaintiff violated RS 14:71 and RS 16:15 of the Louisiana Code which require proof of "intent to defraud".

**INTERROGATORY NO. 5:** State the factual and legal basis for your decision to enter a contract to prosecute Plaintiff for a felony crime with the District Attorney's offices in New Orleans, Louisiana and Bossier City, Louisiana, rather than to simply sue Plaintiff to collect a civil debt, and provide the name, address and employer of all persons who participated in making this decision, and state when and why the agreements to prosecute were entered.

**RESPONSE TO INTERROGATORY NO. 5:** Defendants object to this Interrogatory to the extent it seeks information protected by the attorney-client privilege and the work-product doctrine. Without waiving these objections, Defendants affirmatively state that discovery is not yet complete and reserve the right to supplement this request as permitted by the Rules of Civil Procedure or the Court. Defendants did not "enter a contract to prosecute Plaintiff for a felony crime with the District Attorney's offices in New Orleans, Louisiana and Bossier City, Louisiana." Louisiana law provides that the issuance of worthless checks is a criminal offense. The worthless check reports sent to the Orleans and Bossier Parish District Attorneys' Offices have already been produced and speak for themselves. After Plaintiff breached his repayment agreement with Defendants Robinson, Jazz, and Horseshoe Entertainment, Scott Barber (employed by Robinson Property Group Corp.), Dan Real (employed by Jazz Casino Company LLC), Mike Rich (employed by Horseshoe Entertainment LP), and Brandi Ellis (employed by Harrah's Las Vegas, LLC) decided in consultation to pursue collection of the total amounts owed to those Defendants. The general manager of each property was responsible for determining what collection methods to employ for his individual property.

**REQUEST TO SUPPLEMENT INT NO. 5:** Contrary to your Interrogatory answer, Adrian Rideau signed an Agreement to Prosecute with the New Orleans District Attorney's office which is located at the bottom of his Worthless Check Affidavit. The Interrogatory specifically asked why Defendants entered a Contract to Prosecute the Plaintiff in New Orleans and requested prosecution in Bossier City and rather than simply sue him to collect the civil debt and you failed to answer this part of the Interrogatory.

**INTERROGATORY NO. 6:** From 2011 until the present, please state whether or not anyone on behalf of the named Defendants or other Caesars' entities made any contact with, provided any information to, or made any requests to the District Attorney's

3

office of Tunica County, Mississippi, in regards to the arrest or criminal prosecution of Plaintiff pursuant to Mississippi's "bad check laws", Miss. Code Ann. §§ 97-19-55 and 97-19-75, or contact otherwise related to the collection of gambling debt allegedly owed by Harvey to Robinson Property Group Corp. If so, please indicate the date and substance of each such communication and of the response by the District Attorney's office, state the name, address, phone numbers, and employer of the person(s) who made and received the subject communication, state the factual and legal basis for making such communications on behalf of Defendants, and explain why Plaintiff has not been prosecuted in Mississippi and why you chose to file a civil action to collect against Plaintiff to collect the debt owed to Robinson Property Group, rather than criminal prosecution.

**RESPONSE TO INTERROGATORY NO. 6:** Defendants object to this Interrogatory because it seeks information protected by the attorney-client privilege and the work-product doctrine. Without waiving these objections, Defendants affirmatively state that discovery is not yet complete and reserve the right to supplement this request as permitted by the Rules of Civil Procedure or the Court. Upon information and belief, no such contacts have been made. Defendants further state that Mississippi law allows a civil action to collect on a bad check.

**REQUEST TO SUPPLEMENT INT NO. 6:** Your response did not answer the Interrogatory concerning why Defendants did not attempt to criminally prosecute John Harvey under the Worthless Check statutes in Mississippi and we request supplementation.

**INTERROGATORY NO. 8:** Provide the legal name, address, State of incorporation and principal place of business of all Caesars' entities to which Plaintiff is currently indebted for gambling debt incurred in Mississippi and Louisiana, provide the same information for all entities that were the employers of any individuals who participated in the decision to present casino markers for payment at Community Trust Bank in July 2011 and September 2011, or the decision to seek prosecution of Plaintiff for a crime.

**RESPONSE TO INTERROGATORY NO. 8:** Plaintiff's markers to Horseshoe Entertainment, L.P., totaled $500,000. That this amount was repaid through a restitution agreement between Plaintiff and the Bossier Parish District Attorney. Plaintiff's markers to Jazz Casino Company, LLC, totaled $1.5 million. Plaintiff is repaying this amount through a restitution agreement with the Orleans Parish District Attorney. Plaintiff's markers to Robinson Property Group Corp. totaled $1,000,000. Of that amount, Plaintiff paid $150,000 on or about August 11, 2011. The remaining $850,000 owed to Robinson is still outstanding. See also Response to Interrogatory No. 5. Jazz Casino Company, LLC is a Louisiana LLC with its principal place of business in Louisiana. Horseshoe Entertainment, LP is a Louisiana limited partnership with its principal place of business in Louisiana. Robinson Property Group Corp. is a Mississippi corporation with its principal place of business in Mississippi. Harrah's Las Vegas, LLC, is a Nevada LLC with its principal place of business in Nevada. These entities may be contacted through counsel.

**REQUEST TO SUPPLEMENT INT NO. 8:** The Interrogatory requested that Defendants provide the employee and their employer of all individuals who participated in the decision to present the casino markers to Community Trust Bank in July 2011 and September 2011 for payment and the decision to seek prosecution of Plaintiff for a crime

in Mississippi and Louisiana and you failed to answer this part of the Interrogatory.

**INTERROGATORY NO. 9:**     State why Plaintiff was required to fill out a credit application to establish a line of credit with Defendants, state the individuals and entities who reviewed Plaintiff's credit application for each casino at issue, and state who approved Plaintiff's line of credit and any subsequent increase thereto, including all Player's Agreements entered at each casino location (including Horseshoe Tunica, Horseshoe Bossier City, and Harrah's New Orleans), and state whether or not such approvals had to be done by a representative of Defendants, and list the names, addresses and employers of all individuals who approved increases in Plaintiff's line of credit and/or by Player's Agreement during 2010 and 2011.

**RESPONSE TO INTERROGATORY NO. 9:**     Defendants object to this Interrogatory's characterization of the markers signed by Plaintiff. Defendants affirmatively state that discovery is not yet complete and reserve the right to supplement this request as permitted by the Rules of Civil Procedure or the Court. "Player's Agreements" do not govern guests' ability to write markers at any of the casinos at issue. Defendants' authorized employees are responsible for determining whether a guest may sign markers at Defendants' casinos. Information about Plaintiff's ability to sign markers can be found in the files already produced. *See* HSTCF 000003 (Horseshoe Tunica); HNOCF 000002; HNO 000005, 000019-000020 (Harrah's New Orleans); HSBCF 000052-000054 (Horseshoe Bossier City).

**REQUEST TO SUPPLEMENT INT NO. 9:** Your answer did not provide the reason why Plaintiff was required to fill out credit application to establish a line of credit with the Defendant in order to have the ability to sign markers and as such, borrow money from the Defendants. Also, on this issue which will be addressed in the Request for Productions, you failed to even produce one credit application signed and submitted by John Harvey to establish his line of credit with the Defendants' casinos or individual casinos as the case may be. We request that all credit applications signed by John Harvey be produced. You also failed to provide the names of individuals who reviewed the credit application, who approved Plaintiff's line of credit and subsequent increases, and produce all Player's Agreements signed by John Harvey at each casino location. The documents referenced as STCF3 listed by names, which cannot be legibly understood, who increased his line of credit with the Defendants, HNO-05, 19 and 20 which increased lines of credit and HSBCO-5254 which is more of the same. Your reference to those documents do not answer any of the information sought in this Interrogatory and we request supplementation.

**INTERROGATORY NO. 10:**     For each of the three (3) debt obligations issued at the three (3) respective casinos at issue, explain why a "Players Agreement" is entered and must be signed and dated by the Plaintiff and signed, dated and approved by the Defendants' representatives in order to be validly executed and to validly increase Plaintiff's line of credit, and state whether Plaintiff was given a certain amount of time to pay any amounts borrowed on the line of credit, as reflected in the Player's Agreement and evidenced by extension of credit called "markers", and advise what the number of days Plaintiff was given to repay extensions of credit reflected by the markers signed by Plaintiff

5

at the three (3) casinos at issue. In doing so, please provide the factual and legal basis for your answer and describe documents which support your answer.

**RESPONSE TO INTERROGATORY NO. 10:**     Defendants object to this Interrogatory's characterization of the markers signed by Plaintiff. Without waiving this objection, Defendants affirmatively state that discovery is not yet complete and reserve the right to supplement this request as permitted by the Rules of Civil Procedure or the Court. Defendants deny that a "Player's Agreement" "is entered and must be signed and dated by the Plaintiff and signed, dated and approved by the Defendants' representatives in order to be validly executed and to validly increase Plaintiff's line of credit ." Plaintiff was given thirty (30) days in which to pay the face value of markers he signed before they were deposited as set forth in his credit applications, the "Player's Agreement" he signed with Defendant Jazz, and numerous conversations with Defendants' employees.

**REQUEST TO SUPPLEMENT INT NO. 10:**     Contrary to your answer, the Player's Agreement and various emails produced confirm that the Player's Agreement must be signed and dated by both the customer and an authorized representative of the Defendants in order to be validly executed to establish a dollar limit in Plaintiff's line of credit, or borrowing ability at Defendants' casinos.  On this issue, only one or two Player's Agreements have been produced and we request the production of all Player's Agreements concerning the markers at issue and which Plaintiff executed at Defendants' casinos in our Requests for Production of Documents.  If you contend that the Player's Agreement is not the Agreement which confirmed a limit of line of credit, please state the names of the individuals who authorized to extend the Plaintiff's line of credit at the three (3) casinos at issue and reference the document which gave them the authority to do so without signing a to Player's Agreement.

**INTERROGATORY NO. 12:**     In regards to each of the three (3) debt obligations reflected by casino markers at issue and the presentment of said markers, please state the name, address, phone numbers, employer, and job title of the persons who, on behalf of each of the three (3) respective casinos, were involved with making the decision to present the casino markers for payment at Community Trust Bank on July 7, 2011 for Harrah's New Orleans, on July 13, 2011 for Horseshoe Bossier City, and on September 14, 2011 for Horseshoe Tunica, and for each such presentment, please explain the reasons for your decision to present the casino markers on each particular date, state what, if any, prior notice of presentment or calling the loan due was given to Plaintiff, and describe all documents related to the decision to present the markers and fully describe any evidence of Plaintiff's "intent to defraud" Defendants either at the time the markers (loans) were signed or at the time of presentment.

**RESPONSE TO INTERROGATORY NO. 12:**     Defendants object to this Interrogatory's characterization of the markers signed by Plaintiff. Without waiving this objection, Defendants affirmatively state that discovery is not yet complete and reserve the right to supplement this request as permitted by the Rules of Civil Procedure or the Court. Dan Real, General Manager of Harrah's New Orleans, was responsible for the decision to present Plaintiff's unpaid markers to that casino. Mr. Real ordered those markers to be presented because Plaintiff did not repay their face value within thirty days after signing them on May 26, 2011. Mike Rich, General Manager of Horseshoe Bossier City, was

6

responsible for the decision to present Plaintiff's unpaid markers to that casino. Mr. Rich ordered those markers to be presented because Plaintiff did not repay their face value within thirty days after signing them on April 28, 2011. Scott Barber, Regional President and General Manager of Horseshoe Tunica, was responsible for the decision to present Plaintiff's unpaid markers to that casino. Mr. Barber ordered those markers to be presented because Plaintiff did not repay their face value within thirty days after signing them on June 1, 2011, and because Plaintiff breached his repayment agreement with the three casinos. Plaintiff is a sophisticated and experienced guest at casinos across the country, and he signed markers at as many as fifteen casinos before Defendants presented his markers for nonpayment. He was well aware that his markers were due within thirty (30) days at the time he signed them and that Defendants could present the markers for payment after that time. The 30-day deadline for payment was specifically noted on Plaintiff's credit applications, on the "Player's Agreement" repeatedly referenced in these Interrogatories, and in numerous conversations between Plaintiff and Defendants' employees. Plaintiff's own Third Amended Complaint, at Paragraph 22, alleges that he was given thirty days in which to repay his markers at Harrah's New Orleans. Defendants had reason to believe that Plaintiff intended to defraud them because Plaintiff stopped payment on $3 million in markers after he was allowed the benefit of that amount and despite numerous assurances that he would pay.

**REQUEST TO SUPPLEMENT INT NO. 12:**        Defendants did not provide the reasons for the decision to present the markers, any prior notice of presentment or notice to the Plaintiff and failed to provide your proof of Plaintiff's "intent to defraud" Defendants at the time the markers were signed and at the time of presentment of the markers.

**INTERROGATORY NO. 15:**        State why you caused numerous letters to Plaintiff threatening criminal prosecution to Plaintiff if he did not pay gambling debt and provide the name, address and employer of all persons who participated in the decision to send these letters and state whether or not the letters were form letters routinely used by Defendants to collect gambling debts.

**RESPONSE TO INTERROGATORY NO. 15:**        Louisiana law requires notice letters to be sent before certain collection efforts may be made with respect to worthless checks. Those Defendants subject to Louisiana law send such notice letters when required by Louisiana law.

**REQUEST TO SUPPLEMENT INT NO. 15:**        Your answer did not state the name, address and employer of all persons who participated in the decision to send letters to the Plaintiff threatening criminal prosecution if Plaintiff did not pay gambling debt to Defendants and whether or not these threatening letters were "form letters" routinely used by Defendants to collect gambling debts.

**INTERROGATORY NO. 16:**        If you contend that Plaintiff breached the subject loan agreement described in the Third Amended Complaint, please provide which terms and duties that Harvey allegedly breached, describe Harvey's actions giving rise to the alleged breach and how you discovered this breach, and state whether or not you told Plaintiff that if he gambled at any other casino the agreement would be terminated as a

term of the loan agreement and identify all witnesses to the agreement and termination of the agreement.

**RESPONSE TO INTERROGATORY NO. 16:** Defendants affirmatively state that discovery is not yet complete and reserve the right to supplement this request as permitted by the Rules of Civil Procedure or the Court. Plaintiff breached his repayment agreement with Defendants Robinson, Jazz, and Horseshoe Entertainment when he gambled at the Aria Casino in Las Vegas on or about August 20, 2011. See Response to Interrogatory No. 14. Plaintiff discussed this term with Brandi Ellis and Eric Zilewicz in Las Vegas on or about July 23, 2011. Scott Barber and Plaintiff discussed this term again on or about August 11, 2011, in Tunica County, Mississippi. Defendant was aware of this term, and he admitted the breach (specifically, playing in a blackjack tournament at the Aria Casino) during a telephone conversation with Scott Barber on or about September 1, 2011.

**REQUEST TO SUPPLEMENT INT NO. 16:** Your answer did not describe how you discovered that Harvey had breached the subject loan agreement by gambling at Aria Casino. Please supplement your answer.

**INTERROGATORY NO. 17:** With regards to the phone calls and correspondence threatening criminal prosecution to collect a debt allegedly owed by Harvey, as is alleged in the Third Amended Complaint, please identify all persons (name, address, phone numbers, employer, job title and duties) involved with or participating in the decision and/or approval to request or commence such communications threatening criminal prosecution or who requested criminal prosecution by the District Attorney in New Orleans, the actions of such persons prior to, during and after the time period at issue with regard to the arrest and prosecution of Harvey, and state the legal authority and factual basis for Defendants' use of the threat of criminal prosecution to collect a civil debt against the Plaintiff.

**RESPONSE TO INTERROGATORY NO. 17:** See Responses to Interrogatory No. 5.

**REQUEST TO SUPPLEMENT INT NO. 17:** Your answer did not provide legal and factual basis for Defendants' use of threat of criminal prosecution and criminal prosecution to collect a civil debt against the Plaintiff and all persons who participated in the decision to send threatening letters and request criminal prosecution of the Plaintiff.

**INTERROGATORY NO. 18:** With regards to the dismissal of criminal charges filed against Plaintiff in New Orleans, as is alleged in the Third Amended Complaint, please describe in complete detail the identity of all persons (name, address, phone numbers, employer, job title and duties) involved with or participating in the proposition, terms, final decision to dismiss criminal charges and/or approval of the dismissal of criminal charges against Plaintiff and Restitution Agreement on behalf of Defendants or other Caesars' entities and whether these individuals approved of the dismissal of criminal charges.

**RESPONSE TO INTERROGATORY NO. 18:** The decision to allow Plaintiff to enter into a restitution agreement and to delay criminal proceedings during the pendency of that agreement was made by the Orleans Parish District Attorney's Office. The District Attorney's Office had contact with certain of Defendants' employees, but no Defendant controlled the terms of the restitution agreement or the decision to enter it.

**REQUEST TO SUPPLEMENT INT NO. 18:**    Your answer did not provide the name, address, phone number, employer, job title and duties of all persons employed by the Defendants who participated or communicated to the District Attorney's office concerning the proposition of dismissal of the criminal charges or payment of total amount owed, and the terms of the repayment of the gambling debt owed to Harrah's. Someone on behalf of the Defendants would have talked at length with the District Attorney about Harrah's paying the $300,000.00 fee to the New Orleans District Attorney's office out of the total amount owed of $1,500,000.00 and there were no emails produced as to these discussions. Please supplement.

**INTERROGATORY NO. 20:**    In order for Plaintiff to determine the extent of each Defendant's involvement with the allegations of the Third Amended Complaint and ownership between Defendants, please describe your regular business activity and state what, if any, action or decision that any of your employees took with regard to Plaintiff or the allegations of the Third Amended Complaint. Likewise, if you have knowledge that other entities owned in whole or part by Caesars took actions related to any allegations of the Third Amended Complaint, please describe those actions and state the correct legal name of the Caesars' entity involved.

**RESPONSE TO INTERROGATORY NO. 20:**    Defendants object to this Interrogatory because it is vague, overbroad, and unduly burdensome, particularly the phrases "regular business activity," "action or decision that any of your employees took with regard to Plaintiff" and "other entities owned in whole or part by Caesars." The three casinos at which Plaintiff signed markers are owned by Robinson Property Group Corp. (Horseshoe Tunica), Jazz Casino Company LLC (Harrah's New Orleans), and Horseshoe Entertainment LP (Horseshoe Bossier City). To the extent that any other entities' employees have involvement with or knowledge about this case, Defendants have already disclosed a list of persons thought to have information about Plaintiff's allegations, as well as a list of those persons' employers. That information was provided in Defendants' Initial Disclosures and in emails sent to Plaintiff's counsel on June 10, 2013. With respect to the other Defendants:

- Caesars Entertainment Corporation is a public company and the ultimate parent of Caesars-affiliated properties
- Caesars Entertainment Operating Company, Inc. is a subsidiary of CEC that is not publicly traded
- Harrah's Tunica Corporation was a Nevada corporation that once operated an unrelated casino in Tunica County and was dissolved at the end of 2012
- Horseshoe Gaming Holding, LLC is the 8.08% owner and Limited Partner of Horseshoe Entertainment - the Licensee of Horseshoe Bossier City, LA
- Horseshoe GP, LLC is the General Partner of New Gaming Capital Partnership
- Horseshoe Shreveport, LLC is owned 100% by Horseshoe Gaming Holding, LLC
- Harrah's New Orleans Management Company is owned 100% by Caesars Entertainment Operating Company, Inc., is co-licensee of Harrah's New Orleans, and holds a 5% interest in Harrah's Shreveport/Bossier City

9

Investment Company, LLC
- Harrah's Bossier City Management Company, LLC is owned 100% by Caesars Entertainment Operating Company, Inc., and previously managed Harrah's Louisiana Downs, but manages nothing now
- Harrah's Bossier City Investment Company, LLC is owned 100% by Harrah's Shreveport/Bossier City Investment Company, LLC, owns and operates under d/b/a Harrah's Louisiana Downs a race track and casino in Bossier City, LA under licenses granted it by the Louisiana State Racing Commission ("LSRC") (horse racing) and the Louisiana Gaming Control Board ("LGCB") (slot machine gaming)
- Harrah's Shreveport/Bossier City Investment Company, LLC is owned 84.3% by Harrah's Shreveport Investment Company, LLC, 9.8% by Harrah's Shreveport/Bossier City Holding Company, LLC, 0.9% by Harrah's Shreveport Management Company, LLC, 5% by Harrah's New Orleans Management; and is manager of Harrah's Bossier City Investment Company, LLC
- Harrah's Shreveport/Bossier City Holding Company, LLC is owned 100% by Caesars Entertainment Operating Company, Inc., holds a 9.8% membership interest in Harrah's Shreveport/Bossier City Investment Company, LLC and acts as its managing member.

**REQUEST TO SUPPLEMENT INT NO. 20:**     Your answer did not provide the regular business activity of each Defendant or state what action, if any, that each entity's employees took with regard to the allegations of the Third Amended Complaint.  Please supplement.

**INTERROGATORY NO. 21:**     In order to further clarify each Defendant's involvement with the allegations of the Third Amended Complaint, please state the names (and include the address, phone number, principal place of business, and state of incorporation) of the business entities that own or operate each Defendant in the hereinabove-styled case; the casinos referred to in the Third Amended Complaint as Horseshoe Casino Tunica, Harrah's New Orleans, and Horseshoe Casino Bossier City; and any parent or subsidiary corporations, LLC's or other companies who were involved with or participated in the decision-making, review, investigation and/or approval process in regards to the allegations of the Third Amended Complaint, including, but not limited to, presenting casino markers for payment at the Community Trust Bank in Madison, Mississippi, entering into the loan or payment agreement with Plaintiff in August 2011, the termination of the loan or payment agreement in September 2011, raising or extending Plaintiff's line of credit, credit applications of Harvey, approving Player's Agreement of Harvey, threatening Plaintiff with criminal prosecution for debt collection, entering into agreements to prosecute with the New Orleans and Bossier City District Attorney's offices, and filing Affidavits with the D.A.'s office to criminally prosecute Plaintiff, the decision to criminally prosecute Plaintiff, investigation of Plaintiff's "intent to defraud" Defendants at the time Plaintiff signed casino credit markers and the decision to dismiss the criminal prosecution of Plaintiff by the New Orleans District Attorney and entering into Restitution Agreements with Horseshoe Bossier City and Harrah's New Orleans.

10

**RESPONSE TO INTERROGATORY NO. 21:**       Defendants object to this Interrogatory because it is not a "succinct question" as required by the Case Management order and because its multiple subparts cause Plaintiff's total number of interrogatories to exceed twenty-five. Defendants also object to this Interrogatory because it is overbroad and because it seeks information that is not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, see Response to Interrogatory No. 20.

**REQUEST TO SUPPLEMENT INT NO. 21:**       The Interrogatory also states that with regard to the Third Amended Complaint that you provide the entities who were involved in the decision making, review, investigation of increasing Harvey's line of credit, presenting the markers at Community Trust Bank, entering the loan agreement, threatening criminal prosecution and criminal prosecution, and decision of Bossier City and New Orleans to accept payment agreements and the terms to repay the gambling debt and no answer was provided.

**INTERROGATORY NO. 22:**   Please identify any civil lawsuits or claims filed against any of the named Defendants, or any predecessor or successor in ownership interest, since 2003, which set forth allegations similar to the Third Amended Complaint, namely being those which alleged that you used the threat of criminal prosecution or actual criminal prosecution of anyone who owed you a gambling debt to collect a civil debt, or alleged that you breached a loan agreement for the repayment of casino markers, or alleged that you collected upon a loan or civil debt through extortion or the use of illegal means, or alleged an abuse of process/malicious prosecution/false arrest, defamation, or alleged that you violated one's civil rights, a State's or U.S. Constitution, and/or alleged violation of the RICO Act.   If answered in the affirmative, for each civil action, please provide its jurisdiction, style and case number, filing date, name of all parties and name of each party's attorney, a complete description of the nature and subject matter of the case, the date and casino(s) where gambling debt was incurred, the allegations forming the basis of the claim(s), the current status of the case, and state how each case was resolved.

**RESPONSE TO INTERROGATORY NO. 22:**       Defendants object to this Interrogatory because it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, as most of the named Defendants do not own and operate the three casinos named in the Third Amended Complaint, lawsuits against those entities would have no bearing on this matter.

**REQUEST TO SUPPLEMENT INT NO. 22:**       Plaintiff has alleged that the Defendants had a custom and practice of threatening criminal prosecution and criminal prosecution to collect civil gambling debts owed to his casinos and in fact conspired with the District Attorneys' offices to do so and that such practices were unconstitutional and constituted extortion.   The information concerning other civil lawsuits claiming that Caesars' entities used the threat of criminal prosecution or criminal prosecution to collect gambling debts, used extortion or abuse of process/malicious prosecution, false arrest, defamation or violation of civil rights or RICO are relevant to the subject matter of the Complaint and must be produced.  Please supplement.

**INTERROGATORY NO. 23:**   Please identify all criminal arrests, charges,

11

indictments, or actions against an individual who owed a gambling debt to you and was cited or charged with an alleged violation of any State's "bad check laws" since 2003, wherein you have entered into "contracts to prosecute" with the District Attorney's office or submitted "worthless check affidavits" against said individuals who allegedly failed to pay a debt or who issued an unpaid casino credit marker to any of the named Defendants or other Caesars' entities as the holder, bearer, payee, creditor, or beneficiary. If answered in the affirmative, for each arrest, charge, indictment, or action, please provide the date and jurisdiction in which it was brought or executed; the style and docket number; the name of the prosecuting office or attorney and the defense attorney; the name and address of each defendant or party against whom an arrest, charge, or indictment was brought against; the name of the holder, bearer, payee, creditor, or beneficiary to the subject debt or instrument; a complete description of the nature, subject matter, dates, place of occurrence, and allegations of the matter; the citation to the statute that was alleged to be in violation of; and the current status of the case and how it was resolved, including whether or not the arrest, charge, or indictment led to a conviction, plea, and/or restitution agreement, and state whether or not the gambling debt was paid.

**RESPONSE TO INTERROGATORY NO. 23:**      Defendants object to this Interrogatory because it is overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Furthermore, as most of the named Defendants do not own and operate the three casinos named in the Third Amended Complaint, lawsuits against those entities would have no bearing on this matter. Defendants do not keep records of all arrests or criminal proceedings for worthless check charges. Such files, if they exist, would be in the possession of the respective prosecutors' offices.

**REQUEST TO SUPPLEMENT INT NO. 23:**      For the same reasons set out in No. 22, Plaintiff is entitled to know all individuals who owed you gambling debts who were arrested, charged and indicted under worthless check laws since 2003 wherein Defendants entered Contracts to Prosecute with the District Attorney's office or submitted Worthless Check Affidavits against the individuals who failed to pay, including the identity of the person, the docket number and style of the criminal case, the subject matter of the case, the statute which was alleged to be violated and whether or not the charges led to a conviction plea or restitution agreement and whether the gambling debt was paid.

**INTERROGATORY NO. 24:**      Describe and identify the software and server used by all persons identified in Plaintiff and Defendants' Initial Disclosures in sending and receiving emails which in any way related to Plaintiff or the allegations of the Third Amended Complaint, and state the reason why a third party is needed to access and copy these and any other emails or electronically stored data in your computer system.

**RESPONSE TO INTERROGATORY NO. 24:**      Microsoft Windows Server 2003, Enterprise Edition is the server that was being used by all persons identified in Initial Disclosures during 2010, 2011, and early 2012, and the software utilized was Microsoft Outlook 2003 to send/receive emails throughout the enterprise. In mid-2012, these systems were upgraded to Microsoft Windows Server 2010, Enterprise Edition and Microsoft Outlook 2010, but for the period in question in this matter, the systems had not yet been upgraded.

Historic emails for the various properties are stored on backup tapes that are created

using Tivoli Storage Manager (TSM) on various tape media including IBM 3592 and 9640 mainframe tapes, LTO tapes, and StorageTek tapes. In order to access this archived information, the tapes have to be restored and loaded into a platform where the data can be viewed. Data cannot simply be retrieved from backup tapes without this restoration process. The only email data kept on active servers is the current month's email which would then be backed up to tape and archived at the end of each month.

Because Defendants do not have the necessary tape drives to conduct this process and only maintain the most current version of TSM software, they cannot restore their own backup tapes. This is a standard circumstance for nearly all organizations, as the cost of maintaining multiple tape drives of varying types internally for the rare instances where archived information needs to be restored is higher than the cost and ease with which tape vendors can perform these processes. Email backup tapes for the three properties at issue from 2009-2012 currently reside with GC Partners in Dallas, TX as they have both the physical tape drives as well as the various versions of the TSM software needed to restore and extract data off of the backup tapes.

**REQUEST TO SUPPLEMENT INT NO. 24:** You failed to state the reason why a third party was needed to access and copy emails that were electronically stored data on your computer system and the complete method by which the emails and data were retrieved and whether or not there were any deleted materials or materials which were unable to be retrieved from electronic storage.

**INTERROGATORY NO. 25:** Please specify which, if any, decisions with regard to any allegations of the Third Amended Complaint were taken upon the advice of counsel.

**RESPONSE TO INTERROGATORY NO. 25:** Defendants object to this Interrogatory because it is overbroad, vague, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory because it seeks information protected by the work-product doctrine and the attorney-client privilege.

**REQUEST TO SUPPLEMENT INT NO. 25:** Your office promised to provide a comprehensive privilege list which would include documents withheld under the work-product doctrine and/or attorney-client privilege. Please provide a comprehensive privilege list stating the date of document, subject matter, author of the document, to whom the document was sent, the privilege and reason the document is privileged under whatever privilege is claimed.

With regard to our request for supplementation of your Responses to our Requests for Production of Documents, we request the following supplementation:

**REQUEST FOR PRODUCTION NO. 4:** Produce all documents which you have in your possession which in any way relate to the criminal prosecution of Plaintiff by the New Orleans or Bossier City District Attorney's offices, including, but not limited to, investigation reports, correspondence and documents to and from the District Attorneys' offices, pleadings, statements, affidavits and agreements to prosecute.

**RESPONSE TO REQUEST NO. 4:** Defendants will produce any additional responsive, non-privileged information.

13

**REQUEST TO SUPPLEMENT RFP NO. 4:** In the documents that your produced, there are various emails which reflect that the Bossier City and New Orleans casinos prepared a District Attorney "package" of documents which were sent to the District Attorney's offices and the Worthless Check Affidavits were executed at these respective casinos along with the Agreement to Prosecute in New Orleans and your Request for Prosecution in Bossier City. There are also references to Affidavits executed by Harrah's employees concerning conversations with John Harvey which Geraci stated were proof of "intent to defraud". We are unable to determine what documents were included in the "District Attorney package" and if those documents were produced, please identify by bates number what documents were included, and if not produced, please produce. Please also produce any Affidavit or statement of Harrah's employees which was provided to the District Attorney.

**REQUEST FOR PRODUCTION NO. 6:** If you conducted any investigation to determine whether Plaintiff committed any crime with regard to signing the subject markers to obtain loans from Defendants, including any "intent to defraud" Defendants, produce any and all documents which in any way relate to this investigation, including emails, correspondence, notes, or any other documents wherein this investigation was discussed or exchanged with others.

**RESPONSE TO REQUEST NO. 6:** Defendants are not responsible for conducting criminal investigations. Nonprivileged documents regarding Plaintiff's failure to pay his obligations to certain Defendants have been produced, and Defendants produce any additional responsive non-privileged documents.

**REQUEST TO SUPPLEMENT RFP NO. 6:** The request asks you to produce any and all documents which relate to your clients' determination of John Harvey's "intent to defraud" Defendants. You responded by stating that Defendants were responsible for conducting criminal investigation. If you contend that John Harvey "intended to defraud" Defendants, please produce any and all materials which are in Defendants' possession which support this allegation.

**REQUEST FOR PRODUCTION NO. 8:** With regard to the three (3) casinos where the subject gambling debt was incurred, provide copies of all policies, procedures, manuals or guidelines relating to when a customer should be sent letters threatening criminal prosecution and/or seizure of property to collect a gambling debt, when the casino should investigate to determine whether the customer has committed a crime, and when the casino should provide affidavits or otherwise contact the District Attorney to have the customer criminally prosecuted under any "bad or worthless check" statute.

**RESPONSE TO REQUEST NO. 8:** Defendants object to this Request as vague and misleading. Defendants are currently unaware of any such documents, but will supplement as appropriate.

**REQUEST TO SUPPLEMENT RFP NO. 8:** This request requested production of all policies, procedures, manuals or guidelines of Defendants relating to when letters threatening criminal prosecution should be sent, when the casino should investigate whether or not a crime has been committed and when a casino should provide Affidavits and documents to the District Attorney to have the customer criminally prosecuted under

the worthless check statutes. The only document that you have produced is DEF-1014 which states merely that "accounts with multi-property debts should be forwarded to legal without option to the District Attorney's office." Orleans Parish D.A.'s office does not recommend civil and criminal attempts to recover the same debt at the same time (one or the other). Please produce any other policies, procedures, manuals or guidelines dealing with this issue, include policies of drafting letters and phone calls "treatening" criminal prosecution.

**REQUEST FOR PRODUCTION NO. 9:** Please provide all documents and internal electronically-stored or machine-readable documents relating to or concerning the Plaintiff or events alleged in the Third Amended Complaint, in 2010 and 2011, including but not limited to emails, notes, reports, generated by or between all witnesses listed in Plaintiff's or Defendants' Initial and Supplemental Disclosures or by and between Defendants' employees or agents.

**RESPONSE TO REQUEST NO. 9:** Defendants object to this Request because it seeks information protected by the attorney-client privilege and the work-product doctrine. Defendants also object because this request is overbroad, unduly burdensome, and seeks information outside the scope of discovery. Without waiving these objections, Defendants will produce non-privileged responsive documents in its possession and within the scope of discovery.

**REQUEST TO SUPPLEMENT RFP NO. 9:** In the documents your client produced, there are numerous emails leading to the events alleged in the Third Amended Complaint in 2010, 2011 and you have objected to production based upon attorney-client privilege and work-product doctrine but have not produced a privilege list showing what documents have not been produced. There are significant gaps in the emails throughout this time period wherein no documents were produced. Please provide us with the privilege list showing what emails or electronically generated information have been withheld and privilege claimed. We intend to supplement this request for supplementation with a subsequent letter identifying where the major gaps exist.

**REQUEST FOR PRODUCTION NO. 11:** With regards to the three (3) casinos where Plaintiff incurred the gambling debt at issue, please produce all copies of all records, reports, policies, procedures, manuals, summaries, and other documents which in any way relate to: (a) the decision-making process or standards leading to the creation of a credit application, line of credit, Player's Agreement and casino marker; (b) the review and investigation process of a credit application and patron's credit history; and (c) the approval of the extension or increase of a casino patron's line of credit and Player's Agreement, and covering situations where credit limit was exceeded.

**RESPONSE TO REQUEST NO. 11:** Defendants object to this request because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to this Request to the extent it seeks information about persons, casinos, or entities that have no connection to the events giving rise to this lawsuit. Defendants further object to Plaintiff's characterization of patrons' ability to sign markers at Defendants' casinos. Without waiving these objections, Defendants have produced some responsive information with respect to this Plaintiff and

15

will produce additional non-privileged information. Defendants reserve the right to supplement this response.

**REQUEST TO SUPPLEMENT RFP NO. 11:**      We find no document wherein you have provided us with the records, reports, policies, procedures, or manuals which relate to process for the acceptance of a credit application, establishing a line of credit, execution of a Player's Agreement, authority to issue casino markers, the investigation review process, the credit application and patron's credit history and approval of increases or decreases in the line of credit and situations where the credit limit is exceeded. The only document close to responding to this Request is titled "VIP Player Limits, Deals Domestic Discounts and BGVA" set forth in DEF-1302 through DEF-1305. Please produce documents in response to this request and produce the privilege list of all documents withheld.

**REQUEST FOR PRODUCTION NO. 12:**      With regard to the three (3) casinos where Plaintiff obtained loans at issue, provide copies of all policy and procedure manuals or guidelines, records or reports which relate to the decision making process for how long a customer is given to pay back loans evidenced by casino markers, and covering when the casino markers should be presented to a customer's bank for payment, when notice to a customer of presentation of a casino marker is required, and when a casino should enter a payment or loan agreement for gambling debt, or when to terminate such agreement, with a customer.

**RESPONSE TO REQUEST NO. 12:**      Defendants object to this Request as vague and misleading. Without waiving these objections, Defendants will produce responsive documents in its possession and reserve the right to supplement this response.

**REQUEST TO SUPPLEMENT RFP NO. 12:**      Please provide documents responsive to the request concerning policies and procedures of Defendants for determining when to present casino markers for payment, what notice is required to be given to the customer and when may payment or loan agreement can be used and approved for payment of gambling debt, terms to be included, whether the agreement should be in writing, and when to terminate such agreement.

**REQUEST FOR PRODUCTION NO. 13:**      Please produce full copies of any and all credit applications filled out by Plaintiff at each of the subject casinos referred in the Third Amended Complaint or any other Caesars owned casinos from 2009 until the present, and provide all documents related to the credit applications, lines of credit, increase in lines of credit, Player's Agreements, documents referencing Plaintiff exceeding his line of credit, and issuance of manuals for the same time period.

**RESPONSE TO REQUEST NO. 13:**      Defendants object to this request to the extent it seeks information about casinos not involved in this dispute, as such information is not reasonably calculated to lead to the discovery of admissible evidence. Defendants also affirmatively state that Plaintiff did not "exceed[] his line of credit." Without waiving these objections, Defendants have already produced responsive non-privileged documents.

**REQUEST TO SUPPLEMENT RFP NO. 13:**      You have failed to produce any credit applications filled out by Plaintiff at any casinos owned by your clients from 2009 to present and all documents related to the credit application, the approval process and establishment of lines of credit, increases in lines of credit, credits, Player's Agreement,

document exceeding the line of credit and manuals, policies and procedures concerning the above. Please supplement.

**REQUEST FOR PRODUCTION NO. 14:** Produce copies of any all documents reflecting monies won or lost at any casino owned or operated by Defendants from 2009 through 2011.

**RESPONSE TO REQUEST NO. 14:** Defendants object to this request because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to this Request to the extent it seeks information about persons, casinos, or entities that have no connection to the events giving rise to this lawsuit. Without waiving this objection, Defendants will produce non-privileged responsive documents with respect to Plaintiff.

**REQUEST TO SUPPLEMENT RFP NO. 14:** You have produced one document with what you contend to be winnings or losses at Defendants' casinos with yearly totals, that document being CZR-017. We have requested that you produce documents showing wins or losses by date and casino from 2009 through 2011 and our Interrogatory (referenced above) requesting the same information i.e. dates of wins or losses at Defendants' casinos. Please supplement by producing the requested documents and information.

**REQUEST FOR PRODUCTION NO. 15:** Produce copies of all emails, notes, committee minutes, meeting agenda and other documents which in any way relate to your decision to present casino markers, some signed and one unsigned by Plaintiff, to the Community Trust Bank for payment in July 2011 and September 2011.

**RESPONSE TO REQUEST NO. 15:** Defendants will produce responsive non-privileged documents.

**REQUEST TO SUPPLEMENT RFP NO. 15:** If you have withheld production of any documents relating to the decision to present the markers for payment, please provide us a privilege list.

**REQUEST FOR PRODUCTION NO. 16:** All documents that list, report, describe, summarize, analyze, discuss, comment on, or otherwise relate to marketing schemes, policies or provider manuals, promotions, advertisements, offers, and other efforts to increase the gambling of wealthy customers, including, but not limited to, the use of free and lavish lodging, free meals and beverages, reimbursement or providing airfare to customers, and the use of casino markers and continuous increase in credit lines, as is described in Paragraph 1 of the Third Amended Complaint, and produce all documents relating to the Defendants providing free lodging, food, airfare, transportation and other incentives to gamble to Plaintiff.

**RESPONSE TO REQUEST NO. 16:** Defendants object to this Request because it is vague, overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, Defendants will produce responsive non-privileged documents with respect to Plaintiff.

**REQUEST TO SUPPLEMENT RFP NO. 16:** You have not produced any documents relating to the marketing scheme, policies or manuals, promotions,

advertisements, offers addressing attempting to increase gambling of wealthy customers at your casinos, including providing lodging, meals, beverages, reimbursement for airfare, establishment and increase of credit lines, and free gambling chips. We have identified something called a "Host Incentive Program" in some of the emails produced which appears to be a program providing bonuses to casino "hosts" to customers like John Harvey for increases in lines of credit and issuance of markers for gambling debt. Please produce all documents requested, including any document relating to the "Host Incentive Program" and the bonuses given to the hosts for John Harvey for enticing Mr. Harvey to gamble, lose money borrowed from Defendants and increase his line of credit.

**REQUEST FOR PRODUCTION NO. 17:** Produce any documentation, including, but not limited to, memoranda, correspondence, e-mails, statements, investigation materials, notes, reports and recordings, whether made before, after or at the time of the matters discussed in the Third Amended Complaint, which were exchanged between any employee of Defendants and the District Attorney's offices in New Orleans, Bossier City or Tunica relating to Plaintiff, including all documents sent to or received by the District Attorney, and all affidavits and agreements to prosecute Plaintiff.

**RESPONSE TO REQUEST NO. 17:** Plaintiff has already been given the files sent by Defendants Jazz and Horseshoe Entertainment to the prosecutors in their respective jurisdictions. Defendants will produce additional non-privileged information in their possession.

**REQUEST TO SUPPLEMENT RFP NO. 17:** As set out previously, we have identified emails that both Bossier City and New Orleans sent "D.A. packages" to the respective D.A.'s offices concerning the Request to Prosecute and entering of the Agreement to Prosecute John Harvey. Please produce these documents or identify by Bates Number those documents if they have already been produced. Please also produce any Affidavits or statements given by Defendants' employees to the District Attorney in New Orleans and Bossier City which in any way concern John Harvey.

**REQUEST FOR PRODUCTION NO. 18:** Please provide any documentation of any kind or nature, including, without limitation, memoranda, correspondence, e-mails, statements, and recordings, which relates to Plaintiff's loan or payment agreement with Defendants, or any other Caesars' entity, any payments made by Plaintiff pursuant to the agreement, and Defendants' termination of this agreement.

**RESPONSE TO REQUEST NO. 18:** Defendants object to this Request to the extent it seeks information protected by the work-product doctrine and the attorney-client privilege. Defendants also object to the extent this Request seeks information unrelated to the markers at issue in this lawsuit. Without waiving these objections, Defendants will produce non-privileged information.

**REQUEST TO SUPPLEMENT RFP NO. 18:** If any documents were withheld because of privilege, please produce a privilege list.

**REQUEST FOR PRODUCTION NO. 19:** Produce copies of all documents relating to credit reports that you have obtained on the Plaintiff from casino credit bureaus or national credit bureaus, and produce all documents relating to any adverse credit

reporting sent to any casino credit bureau or national credit bureau that you have made relating to Plaintiff.

**RESPONSE TO REQUEST NO. 19:** Defendant has produced information related to some credit reports obtained by Defendants. Defendants affirmatively state that they obtained numerous credit reports on Plaintiff from numerous sources, some printed and some not. Some of that information is contained in credit files already produced to Plaintiff, and some of that information was not retained See also Response to Interrogatory No. 7.

**REQUEST TO SUPPLEMENT RFP NO. 19:** You produced documents and answered Interrogatories that you sent adverse credit reporting concerning John Harvey to the casino central credit bureau, but have not produced these documents. Please produce all documents relating to any adverse credit reporting concerning John Harvey. You have stated that you have not sent any adverse credit reports to any national credit bureau but that you have requested credit standing with national credit bureaus. Please produce documents relating to your sending for credit reports on John Harvey to any of the three (3) national credit bureaus and responses thereto.

**REQUEST FOR PRODUCTION NO. 20:** Produce the names, addresses and phone numbers of each customer who has owed you a gambling debt by signing casino markers and failed to pay, wherein you have threatened criminal prosecution under the "bad check laws" in Mississippi or Louisiana, and/or have requested any District Attorney's office in Mississippi or Louisiana to prosecute the customer, since 2003, and please also provide the criminal case number and style of case and state whether the debt was paid.

**RESPONSE TO REQUEST NO. 20:** Defendants object to this Request because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST TO SUPPLEMENT RFP NO. 20:** Please produce documents responsive to Request No. 20 relating to customers who signed casino markers and failed to pay your casinos wherein you have threatened criminal prosecution and or requested that the District Attorney's office in Mississippi or Louisiana prosecute the customer, providing the criminal case number if they were prosecuted, style of the case and any documents relating to each case.

**REQUEST FOR PRODUCTION NO. 21:** Since 2003, please provide copies of any civil complaints filed against you, wherein the Plaintiff has alleged that you wrongfully used the criminal process or criminal prosecution to collect a civil debt (a gambling debt unpaid) or otherwise utilized extortion under color or state law to collect a civil debt, and provide a copy of each complaint or style of the case, and a copy of any order or judgment resolving the case.

**RESPONSE TO REQUEST NO. 21:** Defendants object to this request because it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Defendants also object to this Request to the extent it seeks information about persons, casinos, or entities that have no connection to the events giving rise to this lawsuit. Defendants also object to this Request to the extent it seeks documents equally available to Plaintiff.

19

**REQUEST TO SUPPLEMENT RFP NO. 21:**    Please produce copies of all civil complaints against Defendants which alleged that they wrongfully used the criminal process to collect a civil debt (gambling debt) or otherwise used extortion under the color of state law to collect a civil debt, providing a copy of the Complaint and any Order or Judgment resolving the case.

**REQUEST FOR PRODUCTION NO. 22:**    Produce any and all statements in recorded, written, summarized, and/or transcribed form taken from any potential witness, any of Co-Defendants' agents and employees, anyone from the District Attorney's offices Louisiana and Mississippi, and documents prepared or exchanged between the District Attorneys' office and Defendants or any other document, or electronically stored information, which in any way concerns the questions of the Third Amended Complaint, including, but not limited to, the formation, terms, execution and termination of the loan or payment agreement at issue, the terms and duties under the loan agreement and the performance thereof, the increase and extension of Plaintiff's line of credit, the execution of and approval of any Player's Agreement with Plaintiff, the issuance or presentment of the casino markers, the letters and phone calls to Plaintiff threatening criminal prosecution, communication with any District Attorney's office to attempt to criminally prosecute Plaintiff or related to your investigation of whether Harvey committed a crime, the decision to criminally prosecute Plaintiff, investigations, the decision to dismiss criminal proceeding in New Orleans and enter into an Restitution Agreement.

**RESPONSE TO REQUEST NO. 22:**    Defendants object to this request because it is vague, confusing, and overbroad and to the extent it seeks documents protected by the work-product doctrine and the attorney-client privilege. Defendants further object to Plaintiff's characterization of patrons' ability to sign markers at Defendants' casinos. Without waiving these objections, Defendants will produce non-privileged documents in its possession.

**REQUEST TO SUPPLEMENT RFP NO. 22:**    Please produce all documents responsive to Request No. 22, including any statements or Affidavits given to any District Attorney's offices in Louisiana and or Mississippi concerning John Harvey, all electronically stored data which in any way concerns the Third Amended Complaint, loan agreement, execution of markers, Player's Agreement, credit applications or any communication with any District Attorney's office concerning John Harvey. As you have asserted the work-product doctrine, attorney-client privilege for withheld documents, please produce a privilege list providing information on all documents which have been withheld from production on grounds of privilege.

**REQUEST FOR PRODUCTION NO. 23:**    Produce a copy of all correspondence or communications by and between representatives, agents and employees of Co-Defendants (including, but not limited to, all potential witnesses identified in Plaintiff's and Defendants' Initial and Supplemental Disclosures) and by and between representatives, agents and employees of Co-Defendants and anyone else, whether hardcopy or electronically stored, which in any way relate to the Plaintiff and/or to the allegations of the Third Amended Complaint or your Answers, including, but not limited to, those related to Plaintiff's line of credit (such as the formation, execution, terms and termination of the loan

or payment agreement at issue, the increase and extension of Plaintiff's line of credit and formation, execution and approval of every "Player's Agreement" entered into by Defendants and Harvey at any Caesars owned casino in 2010 and 2011, and any communication with any casino credit reporting agency or national credit bureau about the foregoing), those related to the decision to and actual presentment of the subject casino markers to Community Trust Bank, and those related to threats of criminal prosecution and actual criminal prosecution (such as the letters and phone calls by you to Plaintiff threatening criminal prosecution if the gambling debt was not paid, any agreement to prosecute entered into with any District Attorney's office to prosecute Plaintiff, the decision to criminally prosecute Plaintiff and prior investigations to determine if Plaintiff had committed a crime, all documents and communication between Defendants and the Districts Attorney's offices, and the decision to dismiss prosecution in New Orleans and enter into a Restitution Agreement).

**RESPONSE TO REQUEST NO. 23:**    Defendants object to this request because it is vague, confusing, and overbroad and to the extent it seeks documents protected by the work-product doctrine and the attorney-client privilege. Defendants further object to Plaintiff's characterization of patrons' ability to sign markers at Defendants' casinos. Without waiving these objections, Defendants will produce other nonprivileged documents relevant to this matter.

**REQUEST TO SUPPLEMENT RFP NO. 23:**    Please produce a privilege list of all documents withheld.

We enclose our Good Faith Certificate which we request that you sign in connection with our requests for supplementation so that we can file the same with the Court. We request that you provide us with the requested supplementation on or before October 21, 2013. If sufficient supplementation is not obtained, we will proceed with a Motion for Order Compelling Production

Thanks for your assistance. Please advise if you have any questions.

With kind regards,

ADCOCK & MORRISON, PLLC

Ken R. Adcock

Enclosure
cc:    Paul Watkins
       John Harvey

21

FORM 4 (ND/SD MISS. DEC. 2011)

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI

John Harvey

Plaintiff

v.

**CIVIL ACTION
NO. 2:11-CV-194-B-A**

Caesars Entertainment
Operating Company, Inc., et al.

Defendant

## GOOD FAITH CERTIFICATE

All counsel certify that they have conferred in good faith to resolve the issues in question and that it is necessary to file the following motion:

Counsel further certify that:

✔ as appropriate:

☐   1.     The motion is unopposed by all parties.

☐   2.     The motion is unopposed by:

☐   3.     The motion is opposed by:

      4.     The parties agree that replies and rebuttals to the motion will be submitted to the magistrate judge in accordance with the time limitations stated in L.U.Civ.P. 7(b)(4).

☐

FORM 4 (ND/SD Miss. Dec. 2011)

This the _____ day of _____ 20 ___

_____

Signature of Plaintiff's Attorney

Ken R. Adcock (MSB # 1150)
_____

Typed Name and Bar Number

_____

Signature of Defendant's Attorney

_____

Typed Name and Bar Number