# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

JOHN HARVEY                                                                    PLAINTIFF

V.                                                          CASE NO. 2:11CV194-NBB-SAA

CAESARS ENTERTAINMENT OPERATING COMPANY, INC.
CAESARS ENTERTAINMENT CORPORATION
HARRAH'S TUNICA CORPORATION
HORSESHOE GAMING HOLDING, LLC
HORSESHOE GP, LLC
HORSESHOE SHREVEPORT, LLC
HARRAH'S NEW ORLEANS MANAGEMENT COMPANY
HARRAH'S BOSSIER CITY MANAGEMENT COMPANY, LLC
HARRAH'S BOSSIER CITY INVESTMENT COMPANY, LLC
HARRAH'S SHREVEPORT/BOSSIER CITY INVESTMENT COMPANY, LLC
HARRAH'S SHREVEPORT/BOSSIER CITY HOLDING COMPANY, LLC
ROBINSON PROPERTY GROUP CORPORATION d/b/a HORSESHOE TUNICA
JAZZ CASINO COMPANY, LLC d/b/a HARRAH'S NEW ORLEANS
HORSESHOE ENTERTAINMENT, LP d/b/a/ HORSESHOE BOSSIER CITY
HARRAH'S LAS VEGAS, LLC
DESERT PALACE, LLC d/b/a/ CAESARS PALACE
HARRAH'S SHREVEPORT MANAGEMENT COMPANY, LLC
d/b/a HARRAH'S LOUISIANA DOWNS                                                 DEFENDANTS

## MEMORANDUM OPINION

Presently before the court are several motions filed by Defendants and the Mississippi Attorney General in the above-styled matter. Upon due consideration of the motions, responses, exhibits, and supporting and opposing authority, the court is ready to rule.

### Factual Background

On April 28, 2011, John Harvey visited the Horseshoe casino in Bossier City, Louisiana and executed markers[1] in the amount of $500,00.00. Harvey next executed markers at Harrah's

---

[1] A marker is a term used in the casino industry describing a type of negotiable check signed by the maker and on which is the name of the bank at which the maker has an account,

in New Orleans, Louisiana in the amount of $1,500,000.00 on May 26, 2011.  Finally, Harvey traveled to the Horseshoe casino in Tunica, Mississippi on June 1, 2011, and executed markers totaling $1,000,000.00.[2]  Harvey represented to the casinos that he had sufficient funds on deposit in his bank account to cover the full value of the markers.

By June 30, 2011, Harvey had not made payment arrangements with the casinos to satisfy the markers.  Therefore, on July 5, 2011, after notifying Harvey, Harrah's New Orleans placed the markers for collection at Harvey's bank.  Harvey stopped payment on the markers.  Horseshoe Bossier City deposited its markers on July 11, 2011, and Harvey stopped payment on these markers.  On August 11, 2011, Harvey and Scott Barber, the general manager of Horseshoe Tunica, reached a conditional resolution agreement on the collection of all the markers whereby Harvey would make an initial payment of $150,000.00 and subsequent monthly payments of $100,000.00, with the entire balance due by the end of January 2012.  Horseshoe required that Harvey agree not to play at any non-Caesars owned casino.  Harvey could play at any Caesars-owned casino, but any winnings would be used to pay the outstanding balance on the markers.  Barber agreed to write a letter to Harvey's bank concerning the resolution.  Harvey made his first payment.

On August 21, 2011, Caesars employees learned that Harvey was gambling at the MGM-owned Aria Casino in Las Vegas, Nevada.  After Barber confronted Harvey, Harvey ultimately

---

usually with the account information, and the understanding is that the "marker" can be cashed at the maker's described bank as a personal check could be.

[2] Horseshoe Entertainment, LP does business as Horseshoe Bossier City; Jazz Casino Company, L.L.C. operates as Harrah's New Orleans; Robinson Property Group does business as Horseshoe Tunica.  All three casinos are ultimately owned by the Caesars Corporation.

admitted to gambling. Barber notified Harvey that Harvey had breached the terms of the agreement and that the full amount owed was due immediately. Harvey refused to pay the balance. Horseshoe Tunica then deposited its markers, worth then $850,000.00, with Harvey's bank. Harvey stopped payment on these markers.

Harrah's New Orleans and Horseshoe Bossier City reported Harvey's markers and Harvey's refusal to honor them to their respective district attorneys in Louisiana. The prosecutors pursued prosecution against Harvey and restitution agreements were ultimately reached.[3] Harvey repaid Horseshoe Bossier City and currently makes timely payments to repay Harrah's New Orleans.

Harvey initiated the instant action against the Caesars Defendants on September 12, 2011, alleging the following claims: breach of contract, malicious prosecution, false arrest, abuse of process, negligent infliction of emotional distress, intentional infliction of emotional distress, defamation, extortion, violations of 42 U.S.C. §§ 1983 and 1985 and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and actions to declare Miss. Code Ann. §§ 97-19-75 and 97-19-55 and La. Rev. Stat. Ann. §§ 14:71 and 16:15 unconstitutional. Defendants asserted a counter-claim against Harvey for breach of contract and subsequently moved for summary judgment on its counter-claim as well as Harvey's claims. The Mississippi Attorney General has entered an appearance to defend the constitutionality of the state statutes.[4]

---

[3] This case was stayed for a significant time due to Harvey's challenge of the criminal charges brought by the Orleans Parish District Attorney in federal court in Louisiana; however, injunctive relief was denied.

[4] The Louisiana Attorney General was noticed in this action by Plaintiff that Harvey challenged the constitutionality of two Louisiana state statutes, but has not entered an appearance.

<u>Standard</u>

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In reviewing the evidence, this court must draw all reasonable inferences in favor of the nonmoving party, and avoid credibility determinations and weighing of the evidence. *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000). In so doing, the court must disregard all evidence favorable to the moving party that the jury is not required to believe. *Reeves*, 530 U.S. at 151. Plaintiff's "burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1975 (5th Cir. 1994) (citations omitted).

A judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is considered under the same standard as deciding a Rule 12(b)(6) motion to dismiss. *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The court "accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 117, 180 (5th Cir. 2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

A.  **Defendant Robinson Property Group's Motion for Summary Judgment on its Counter-claim**

Defendant Robinson Property Group ("RPG"), doing business as the Horseshoe Casino in Tunica, Mississippi, moves the court for entry of summary judgment in its favor on the breach of contract claim alleged against Plaintiff Harvey. In support, Horseshoe Tunica argues that Harvey indisputably owes the casino the balance immediately on the markers he executed due to his material breach of the agreement for timely payments by gambling at a Caesars competitor, in violation of the parties' agreement. Harvey alleges that Horseshoe Tunica improperly terminated that agreement.

"Termination [of a contract] is permitted only for a material breach. A breach is material when there 'is a failure to perform a substantial part of the contract or one or more of its essential terms or conditions, or if there is such a breach as substantially defeats its purpose, or even the breach of the contract is such that upon a reasonable construction of the contract, it is shown that the parties considered the breach as vital to the existence of the contract.'" *UHS-Qualicare, Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So. 2d 746, 756 (Miss. 1987) (quoting *Gulf South Capital Corp. v. Brown*, 183 So. 2d 802, 805 (Miss. 1966); *Matheney v. McClain*, 161 So. 2d 516, 520 (Miss. 1964).

"Materiality is ordinarily a question of fact, *e.g., Hensley v. E.R. Carpenter Co.,* 633 F.2d 1106, 1110 (5th Cir.1980), albeit one of ultimate fact, not evidentiary fact. The standard for determining materiality must necessarily be both 'imprecise and flexible' to 'further the purpose of securing for each party his expectation of an exchange of performances.'" *UHS-Qualicare,*

*Inc. v. Gulf Coast Cmty. Hosp., Inc.*, 525 So. 2d 746, 756 (Miss. 1987) (quoting *Restatement (Second) of Contracts* § 241 comment a (1981)).

Harvey admits that he signed the markers and later agreed to the terms of the repayment plan, but argues that his participation in a blackjack tournament in August 2011 at the MGM-owned Aria in Las Vegas was not a material breach of the repayment agreement. Harvey contends that his actions should not be considered to be gambling, since he used another person's funds. Harvey relies on his interpretation that the term "play" used in the oral contract was ambiguous because it was not defined in the contract. He argues that while Defendant contends that the term prohibited Harvey from gambling at a rival casino, Harvey construes "play" to mean entering a game where he stands a chance to lose or win. Harvey concludes that by using someone else's money, he did not gamble or "play" at the Aria casino. The court finds the term "play" in the context of a casino is not vague, and that the generally accepted interpretation of the term is participating in games available at a casino.

During Harvey's time at the Aria casino, he presented $300,000 in cashier's checks in his name from his bank, received $15,000 in chips from his player's account and signed a $10,000 casino marker on his bank account. Regardless of whether he borrowed this money from another source, Harvey entered himself in the blackjack tournament, played in it, and therefore, stood a chance to lose or win money in the tournament.

Harvey further claims that even if his actions violated the contract, Caesars employees admittedly had no authority to prevent him from gambling at other casinos. While it may very well be true that no such authority existed, Harvey voluntarily agreed to the terms of the repayment agreement, specifically, the prohibition term. The term was agreed upon after

negotiation between Harvey and Barber, on behalf of the Horseshoe. The court finds that no reasonable juror could determine that Harvey's breach was not material. Defendant was therefore justified in terminating the repayment agreement and attempting to collect the money owed on the markers.[5]

Harvey additionally argues that summary judgment should be denied because Barber's failure to immediately send a letter to Harvey's banks was a material breach of the contract by Defendant. The court disagrees. This term had a *de minimus* effect on the contract and appears to be a favor to Harvey on behalf of Caesars. Harvey's argument that without this term he would have immediately paid the money due in full and refused to pay in installments is unpersuasive. Defendant, therefore, did not materially breach the contract by not sending the letter within ten days of the agreement.

Harvey's overarching argument related to Defendant's breach of contract claim is that the markers executed by Harvey were novated by the subsequent repayment agreement. In Harvey's view, the repayment agreement extinguished the markers owed to the casinos and substituted the Caesars parent company as the new creditor.

A novation involving substitution of debtors is a contract that (a) discharges immediately an existing contractual obligation, (b) creates a new contractual obligation by, (c) including as the new obligor a party who was not previously obligated. The contract of novation is a mutual undertaking among all parties concerned. *Mississippi Motor Fin., Inc. v. Enis*, 628, 181 So. 2d 903, 904 (Miss. 1966) (citing *Greenwood Leflore Hosp. Commission v. Turner*, 56 So.2d 496

---

[5] The court finds no merit to Harvey's argument that spending another person's money would defeat Defendants' goal in not having Harvey spend his money at rival casinos.

(Miss. 1951); *Sussman, Wormser & Co. v. Sea Food Co.*, 90 So. 116 (Miss. 1921); *Corinth, S. & S. Turnpike Co. v. Gooch*, 73 So. 869 (Miss. 1916); 39 Am.Jur. Novation § 2 at 254-55 (1942); Restatement, Contracts § 424 (1932)). Plaintiff's theory fails for several reasons. First, there was no express agreement that Harvey was released from payment of the debt. Instead, the agreement between the parties reaffirmed the existing debt and established a method by which Harvey could pay. Further, Plaintiff's belief that the markers were novated is wholly one-sided. There is no evidence that the parties mutually agreed to extinguish the debt and substitute a new creditor, specifically, Caesars parent company instead of the three separately owed casinos. In fact, evidence shows the reverse. Under the agreement, Harvey was to make his periodic payments to Robinson Property Group ("RPG"). RPG is a company that does business as Horseshoe Tunica. Horseshoe Tunica continues to show on its accounting books that Harvey's debt is owed directly to the casino. The court finds that the evidence fails to show a novation of the contract occurred.

Harvey is further required to pay attorneys' fees to Robinson Property Group ("RPG"). In conjunction with executing markers, Harvey signed a credit line application, indicating he would pay Horseshoe Tunica attorneys' fees. RPG operates and does business as Horseshoe Tunica. Further, because no bona fide dispute existed on whether Horseshoe Tunica was due the amount of the markers, Harvey owes prejudgment interest. *See Tupelo Redevelopment Agency v. Abernathy,* 913 So. 2d 278, 286 (Miss. 2005). Since the contract had no provision related to prejudgment interest, the court finds that interest shall be awarded from the date the markers became due - September 13, 2011, since that date is later than the date of the filing of the complaint. *See* Miss. Code Ann. § 75-17-7. Mississippi courts typically use the rate of eight

percentage (8%), and the court will award the same. *Gordon v. Gordon*, 929 So. 2d 981, 985 (Miss. Ct. App. 2006); *see also In re Guardianship of Duckett*, 991 So. 2d 1165, 1180¶¶ 31-34 (Miss. 2008). Defendant's motion for summary judgment is hereby granted as the breach of contract claim.

**B.     Defendants Caesars Entertainment Corporation, Harrah's Tunica Corporation, Horseshoe Gaming Holding, LLC, Horseshoe GP, LLC, Horseshoe Shreveport, LLC, Harrah's New Orleans Management Company, Harrah's Bossier City Management Company, LLC, Harrah's Bossier City Investment Company, LLC, Harrah's Shreveport/Bossier City Investment Company, LLC, Harrah's Shreveport/Bossier City Holding Company, LLC, Harrah's Las Vegas, LLC, Desert Palace, LLC, and Harrah's Shreveport Management Company, LLC's Motion for Summary Judgment on Plaintiff's Claims**

The defendants named above seek summary judgment on the grounds that no evidence exists to suggest that these subsidiary companies had any role in the actions giving rise to Plaintiff's claims. Plaintiff concedes the dismissal of all defendants named in the motion with the exception of Caesars Entertainment Corporation. In support, Plaintiff points to the deposition testimony of two Harrah's New Orleans casino employees, LuAnn Pappas and Dan Real. Ms. Pappas stated that she was employed by Caesars Entertainment, although she did not know whether her employer was Caesars Entertainment Operating Company or Caesars Entertainment Corporation. Mr. Real clarified that Caesars Entertainment Corporation was his and Ms. Pappas' employer and that everyone employed at Harrah's New Orleans ultimately reported to Caesars Entertainment Corporation. There is sufficient evidence purporting to show that Caesars Entertainment Corporation is the parent company of at least Harrah's New Orleans and likely other companies named as defendants in this action. The motion will be denied as to Caesars

9

Entertainment Corporation and granted as to the remaining defendants seeking relief through this motion.

C.  **Intervener Mississippi Attorney General Jim Hood's Motion for Judgment on the Pleadings**

The Mississippi Attorney General has filed memoranda in this case defending the constitutionality of Miss. Code Ann. §§ 97-19-55 and 97-19-75 and moving the court for a judgment on the pleadings on Harvey's claim to declare these two statutes unconstitutional. The Attorney General argues that Plaintiff lacks standing to challenge the statutes.

To establish standing, a "plaintiff must have suffered an injury in fact - an invasion of a legally protected interested which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id*. (citations omitted).

Harvey alleges that there is an imminent threat of prosecution under Mississippi's Bad Check laws for the debt owed to Horseshoe Tunica because there has been no assurance and no agreement not to prosecute him. In the nearly three years since Harvey stopped payments on the markers, a prosecution has not been initiated against him under bad check laws and more significantly, Horseshoe Tunica has not reported Harvey to the Tunica County District Attorney's Office for executing worthless checks, nor do its employees indicate they will do so. Moreover, given the court's judgment in favor of Defendants, Horseshoe Tunica is highly unlikely to seek prosecution under the markers. The court finds Harvey's belief that prosecution is imminent to be wholly speculative.

Even if Harvey could establish standing to challenge the statutes, the court would find the laws constitutional.

Harvey argues that Miss. Code § 97-19-75 gives district attorneys an improper pecuniary motivation to prosecute individuals under the law because it allows them to recover a service charge of ten percent of the face value of a marker over $10,000, violating the Due Process Clause of the Fourteenth Amendment.

District attorneys do not personally profit from the service charges. The service charges are not used to supplement district attorneys' salaries, rather the money can be used to only pay expenses of the office. There is no evidence that the offices are financially dependent on the maintenance of a high level of service charges on collections from markers.

Harvey also contends that the statute violates the Equal Protection Clause of the Fourteenth Amendment by requiring the issuer of a worthless casino marker to pay a higher service charge than the issuer of a bad check. Harvey's challenge under the Equal Protection Clause will be afforded rational basis review and the statutes will be upheld as long as the differential classification bears a rational relation to some legitimate end. *See Romer v. Evans*, 517 U.S. 620, 631 (1996). The state offers the following rational bases for the differential treatment of casino markers and regular checks: (1) the State of Mississippi's goal of deterring citizens from signing bad casino markers; (2) higher revenues from services charges on markers will compensate the government for the cost of enforcing the Bad Check law against gamblers; and (3) individuals who sign bad casino markers are more likely to have the financial ability to pay a larger service charge. The court finds these reasons constitute rational bases on which the State of Mississippi can base unequal treatment of the instruments.

The Attorney General further questions Harvey's standing to mount an Eight Amendment challenge to the statute. Harvey has not been prosecuted under the statute and therefore, has not been fined under the statute. Thus, Harvey does not meet the standing requirement to challenge the fee. Regardless, it is improbable the court would find a ten-percent fee is excessive under the Eighth Amendment. *See Ford Motor Credit Co. v. NYC Police Dept.*, 503 F.3d 186, 190, n.7 (2d Cir. 2007). Finally, Harvey's contention that Miss. Code § 97-19-75 violates the Thirteenth Amendment's prohibition on involuntary servitude is without merit. The statute allows for individuals to forego a trial and voluntarily agree to pay restitution and a service charge, not compulsively perform services.

Regarding Miss. Code Ann. § 97-19-55, Harvey contends that the law authorizes imprisonment for debt in violation of Art. 3, § 30 of the Mississippi Constitution, as well as the Eighth, Thirteenth and Fourteenth Amendments to the Constitution. Harvey relies on his belief that casino markers are not checks, but rather extensions of credit; and therefore, any conviction of a person executing a worthless marker under the Bad Check law would be unconstitutional. The court disagrees. The statute in question specifically states that a "'[c]heck' includes a casino marker issued to any licensed gaming establishment." Miss. Code Ann. § 97-19-55(2)(a). The markers provide a person's name and banking institution as well as a specific amount owed to the casino. The court finds markers are permissibly considered checks and a conviction under the Bad Check Law based on a marker is not unconstitutional.

Based on the foregoing, the court hereby grants the Mississippi Attorney General's motion for judgment on the pleadings as to Harvey's claims of the unconstitutionality of Miss. Code Ann. §§ 97-19-55 and 97-19-75.

**D. Defendants Caesars Entertainment Operating Company, Inc., Robinson Property Group Corp., Horseshoe Entertainment LP, and Jazz Casino Company, LLC's Motion for Summary Judgment on Plaintiff's Claims**

Defendants move for summary judgment on Harvey's claims of breach of contract, malicious prosecution, false arrest, abuse of process, negligent infliction of emotional distress, intentional infliction of emotional distress, defamation, extortion, violations of 42 U.S.C. §§ 1983 and 1985 and RICO, and actions to declare Miss. Code Ann. §§ 97-19-75 and 97-19-55 and La. Rev. Stat. Ann. §§ 14:71 and 16:15 unconstitutional.[6] Defendants first seek dismissal of Harvey's breach of contract claim. For the reasons stated, *supra*, Defendants were justified in terminating the repayment agreement due to Harvey's material breach. Therefore, Harvey's claim that Defendants breached the contract will be dismissed.

To prove a claim for malicious prosecution under Louisiana law, Plaintiff must establish: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. *Jones v. Soileau*, 448 So. 2d 1268, 1271 (La. 1984) (citing *Eusant v. Unity Industrial Life Ins.*, 196 So. 554, 556 (La. 1940)). Plaintiff satisfies only the first element. The district attorney, not Defendants or any employees of Defendants, had the sole authority to decide whether to prosecute Harvey. Thus, the proceedings were legally caused by the respective district attorneys.

---

[6] Defendants assert that Harvey's extortion claim is not a cognizable civil cause of action under Mississippi or Louisiana law. Plaintiff concedes that the extortion criminal statutes do not provide civil relief and therefore this claim will be dismissed. *See* Pl's Memorandum Brief in Support of Response to Motion for Summary Judgment (Dkt. 273), at 9.

Further, the criminal proceedings did not terminate in Harvey's favor. Rather, Harvey entered into restitution agreements with the district attorneys to repay the money owed. Harvey cannot point to the absence of probable cause for the proceeding. "The crux of the probable cause inquiry in a malicious prosecution case is whether the person filing the charges lacked an 'honest and reasonable belief in the [defendant's] guilt' at the time charges were filed." *Sipes v. City of Monroe,* No. 11-CV-01668, 2013 WL 4410994, at *7 (W.D. La. Aug. 15, 2013) *(*quoting *Jones,* 448 So.2d at 1272). By stopping payment on the markers, Harvey intentionally rendered the markers uncollectible; therefore, the markers were worthless. Therefore, Harvey's malicious prosecution claim fails as a matter of law.

A plaintiff bringing a claim for false arrest under Louisiana law must prove: "(1) detention of the person; and (2) the unlawfulness of the detention." *Richard v. Richard*, 74 So.3d 1156, 1159 (La. 2011). Defendants never restrained Harvey or arrested him. Harvey voluntarily surrendered to the Orleans Parish District Attorney's office. Moreover, the detention was not unlawful since probable cause existed, as discussed *supra*.

Harvey further alleges that Defendants' conduct in reporting the returned markers to the district attorneys' offices constituted abuse of process since it was use of the criminal system to collect on a civil debt. The "essential elements for a cause of action for abuse of process under Louisiana law are (1) the existence of an ulterior purpose; and (2) a wilful act in the use of the process not in the regular prosecution of the proceeding." *Graham v. Foret*, 818 F.Supp. 175, 178 (E.D. La. 1992). The court finds no evidence of ulterior purpose in Defendants attempting to collect a worthless check. *See id*. The presence of probable cause, as discussed above, further defeats Harvey's abuse of process claim. *Id*.

Regarding Harvey's claim of negligent infliction of emotional distress, he does not plead any physical manifestation of injury as required under Louisiana law *see also Moresi v. State*, 567 So. 2d 1081, 1095-96 (La. 1990). While Mississippi courts are split on the requirement of physical injury, when no physical injury occurred, Defendants actions must be outrageous in nature in order for Plaintiff to prevail. *See Adams v. U.S. Homecrafters, Inc.*, 744 So. 2d 736, ¶¶ 17-18 (Miss. Ct. App. 1999). Here, there is a lack of evidence of outrageous conduct on behalf of Defendants. Thus, Harvey's claim fails as a matter of law. *See Wilson v. Gen. Motors Acceptance Corp.*, 883 So. 2d 56, 65, ¶¶ 35-36 (Miss. 2004);

Similarly, Harvey's claim for intentional infliction of emotional distress fails due to a lack of evidence showing any type of outrageous conduct on behalf of Defendants. *See Funderburk v. Johnson*, 935 So. 2d 1084, 1104, ¶ 57 (Miss. Ct. App. 2006).

For Harvey to prevail on a claim for defamation, he must prove: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Fulton v. Miss. Publishers. Corp.*, 498 So.2d 1215, 1216 (citing Restatement (Second), Torts § 558). Harvey claims Defendants defamed him by reporting the returned markers to a credit reporting service, by presenting the markers to his bank, and by reporting the returned markers to district attorneys. The fact that Harvey stopped payment on the markers is undisputedly true. Further, there is no statement on the markers that would result in presentation of them constituting defamation. Lastly, any report of potential criminal activity would be

privileged, and thus, not establish a claim for defamation.  *See Cook v. Am. Gateway Bank*, 49 So.3d 23, 33-34 (La. Ct. App. 2010).

Defendants further seek dismissal of Harvey's RICO claim.  "Section 1964(c) [of the United States Code] provides a RICO plaintiff with a civil action to recover treble damages for injuries caused by a violation of section 1962.  A violation of section 1962(c) "requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Old Time Enters., Inc. v. Int'l Coffee Corp.*, 862 F.2d 1213, 1217 (5th Cir. 1989) (quoting *Montesano v. Seafirst Commercial Corp.,* 818 F.2d 423, 424 (5th Cir.1987)).  Harvey has failed to produce even a scintilla of evidence purporting to show that Caesars or its employees engaged in any form of racketeering activity or any type of RICO enterprise.  The claim will be dismissed.

For the reasons stated *supra* in discussing the Mississippi Attorney General's motion for judgment on the pleadings, Harvey lacks standing to challenge the Mississippi statutes and otherwise the statute is not unconstitutional.  The Louisiana Attorney General, while noticed and served in this matter, did not enter an appearance to defend the constitutionality of the state's statutes.  Regardless, the court finds Harvey lacks standing to challenge the collection fee.  Harvey claims that La. Rev. Stat. Ann §§ 14:71 and 16:15 violate the Fourteenth and Eight Amendments because they give prosecutors sole discretion in determining whether to prosecute and allow the district attorney to collect a twenty percent fee on debt collected.  Upon reaching a restitution agreement with Harvey, the Louisiana district attorney offices collected a fee much lower than the twenty percent Harvey argues is unconstitutional.  Further, as the Louisiana Court of Appeals determined in Harvey's appeal of his criminal proceedings, "there is no indication that the State will be collecting any fees in this case pursuant to La. R.S. 16:15." *State of*

*Louisiana v. John Harvey*, No. 2011-K-1763, (La. Ct. App. 2012), at 1. The assistant district attorney for the New Orleans Parish specifically stated that "[Harvey] has not been ordered to pay $300,000 to the district attorney's office, nor will he ever be: the district attorney has represented, on the record, that the district attorney's office will not seek to enforce the provision of R.S. 16:15 in the event of conviction because it is not empowered to do so." *Id*. Application for Writ of Supervisory Review, at 6. Given this representation, and the fact that the Bossier City Parish has similarly not collected such a fee, the court finds Harvey lacks standing to challenge the fee statute. Even if Harvey could challenge the fee provision, the collection of such a charge would not be unconstitutional. Unlike in *Tumey v. Ohio*, 273 U.S. 510 (1927), cited by Plaintiff, the salary of the person with power to prosecute under these statutes is not impacted by the collection of fees. La. R.S. 16:15's fee collection applies prior to prosecution commencement. The district attorney may collect a fee whenever his office collects and processes a check, not when the court collects restitution through an agreement after a criminal charge.[7]

Moreover, the court is not convinced that jurisdiction exists to declare the Louisiana state statutes unconstitutional. It is axiomatic that the party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *E.g.*, *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). Plaintiff alleges no basis for jurisdiction in his Fourth Amended Complaint for this declaratory relief sought.

---

[7] Harvey further claims that the Louisiana markers are enforceable under La. Civ. Code Art. 2983, since the law prohibits the enforcement on gambling debts; however, this applies to illegal gambling, and the casino markers at issue do not represent a debt incurred in an illegal activity. *See Strong v. Eldorado Casino Shreveport Joint Venture*, 73 So.3d 967, 976 (La. Ct. App. 2011).

Harvey's claim under 28 U.S.C. § 1983 is dismissed for failure to provide evidence of any state action on behalf of Defendants. *See Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). Reporting a violation of the statute is not conduct that a fairly attributable to the state since it is not a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law . . . ." *Brown v. Miller*, 631 F.2d 408, 411 (5th Cir. 1980) (quoting *Monroe v. Pape*, 365 U.S. 167, 184 (1961); *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Finally, the court grants summary judgment for the Defendants on Harvey's § 1985 claim. Section 1985(3) requires that there must be "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 834 (1983) (quoting *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)). The court is not aware of any case law establishing a protected class for persons executing casino markers. The claim will be dismissed.

## Conclusion

For the foregoing reasons, the court finds that judgment should be issued in favor of Defendants. A separate order in accord with this opinion will issue this day.

This, the 24th day of September, 2014.

> /s/ Neal Biggers
> **NEAL B. BIGGERS**
> **UNITED STATES DISTRICT JUDGE**